**E-Filed 5/13/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| VALLEY COMMUNITY BANK,<br><br>  Plaintiff,<br><br>  v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>  Defendant. | Case Number 5:11-cv-00574-JF (HRL)<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE, WITH LEAVE TO AMEND<br><br>[re: dkt. entry 16 ] |

Plaintiff Valley Community Bank ("Valley") moves to strike portions of the answer filed by Defendant Progressive Casualty Insurance Company ("Progressive"). The Court has considered the moving and responding papers and the oral argument presented at the hearing. For the reasons discussed below, the motion to strike will be granted in part and denied in part, with leave to amend.

## I. BACKGROUND

Valley is a California corporation and a bank. Progressive is an Ohio corporation that issues financial institution bonds. Progressive issued such a bond to Valley for the period August 2007 to August 2010. The bond provided coverage for various types of loss, including loss

---

[1] This disposition is not designated for publication in the official reports.

resulting from forgery or alteration of documents.

Valley claims that it suffered a covered loss as a result of a fraudulent scheme perpetrated by two individuals, William "Boots" Del Biaggio ("Boots") and David Scott Cacchione ("Cacchione"). According to Valley, Cacchione provided Boots with account statements of customers of Caccione's employer, Merriman Curhan Ford & Co. ("Merriman"). Boots allegedly pasted his name and address over the true customers' names, copied the account statements, and used them to obtain approximately $45,000,000 in loans from a number of financial institutions by pledging the securities listed on the account statements as collateral. Boots and Cacchione currently are incarcerated as a result of this conduct.

Valley loaned Boots $4.25 million based upon the altered account statements. As part of the loan process, Valley required that an employee of Merriman sign an Account Control Agreement ("ACA") pledging the securities in the Merriman accounts as collateral. Under such an agreement, a brokerage firm promises that it will not permit any sale or transfer of the borrower's equities until the loan is repaid. Valley was provided with an ACA on Merriman's standard form which appeared to have been signed by Cacchione.

In May 2008, the Securities & Exchange Commission investigated the Merriman firm and uncovered the Boots/Cacchione scheme. Valley discovered the scheme shortly thereafter, and it filed a claim with Progressive under the financial institution bond. Valley claimed a loss of $4.25 million and sought recovery of the bond limit of $ 3.5 million. On July 28, 2008, Progressive's counsel issued a letter that set forth the facts of the alleged scheme as she understood them, and then stated as follows:

> The Bond excludes coverage for loan losses whether the loan at issue was procured in good faith or through trick, artifice, fraud or false pretenses. The only exceptions to the Loan Loss Exclusion are if coverage is available under Insuring Agreements (A), (E) or (G) of the policy. . . . Insuring Agreement (E), Securities, covers direct loss resulting from extensions of credit made on the faith of certain specified documents which are either forged, altered, lost, stolen or in certain cases, counterfeit. The Bank must have had actual physical possession of the original document prior to extending credit or the Insuring Agreement does not apply.

Exh. D to Complt. The letter explained that based upon the facts provided to Progressive Insuring Agreements (A) and (G) appeared to be inapplicable. It went on to state: "As we

1  discussed, given the uncertainty as to what exactly transpired in connection with the Bank's loan,
2  it is not possible for Progressive to provide the Bank with a definitive coverage determination at
3  this time." *Id*.

4  On December 16, 2010, Progressive's counsel issued a second letter that again set forth
5  the facts as she understood them, this time in more detail than in the prior letter. The letter noted
6  Valley's position that its loss came under Insuring Agreement (E), covering direct loss resulting
7  from an extension of credit based upon certain forged documents, such as security agreements.
8  Specifically, Valley contended that the ACA was a "security agreement" within the meaning of
9  Insuring Agreement (E), and that Cacchione's signature on the ACA was forged. The letter
10 concluded that the ACA was not a security agreement within the meaning of Insuring Agreement
11 (E), and that Cacchione's signature was not a forgery. The letter advised that Valley could have
12 the claim denial reviewed by the California Department of Insurance. Exh. E to Complt.

13 Valley filed this action in the Santa Clara Superior Court, alleging claims against
14 Progressive for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair
15 dealing; (3) fraud; and (4) declaratory relief. Progressive removed the action to this Court on the
16 basis of diversity of citizenship. Progressive filed the operative first amended answer ("answer")
17 on February 22, 2011.

## II. DISCUSSION

19 Valley moves to strike certain denials from the answer and to deem the corresponding
20 allegations of the complaint to be admitted. Valley also moves to strike certain affirmative
21 defenses. Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a
22 pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous
23 matter." As an initial matter, Valley has not cited any authority for the proposition that a court
24 may deem allegations of the complaint to be admitted as a penalty for pleading material subject
25 to a Rule 12(f) motion. Accordingly, the motion will be denied to the extent that it seeks a
26 determination that any allegations of the complaint be deemed admitted.

27 With respect to the challenged denials, Valley contends that their falsity is apparent in
28 light of admissions made by Progressive in its letters of July 28, 2008 and December 16, 2010,

3

Case No. 5:11-cv-00574-JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE, WITH LEAVE TO AMEND
(JFLC2)

discussed above, which are attached as exhibits to the complaint.  For example, Valley asserts that Progressive improperly asserted a lack of information and belief with respect to an allegation that Cacchione gave Boots account statements belonging to Merriman customers.  Valley points to the recitation of facts in both Progressive letters, which refer to Cacchione doing just that.  However, as Progressive argues in opposition to the motion, both letters suggest that Progressive's recitation of facts was based upon information provided by Valley.  The letters do not preclude Progressive from conducting discovery to determine whether all of those facts actually are true.  Without conducting such discovery, Progressive cannot be expected to admit facts regarding the chain of events that gave rise to this lawsuit.

Some of the challenged denials technically may be subject to a motion to strike (for example, an apparent denial that the bond limits are $3.5 million).  However, the Court sees little point in granting a motion to strike with respect to these aspects of the answer, which appear to be innocuous in light of ambiguities in both the complaint and the answer.

The motion likewise will be denied with respect to the first affirmative defense, asserting that the complaint fails to state a claim upon which relief may be granted.  Although Valley argues that failure to state a claim is not a proper affirmative defense, Federal Rule of Civil Procedure 12(h)(2) provides that failure to state a claim upon which relief may be granted is a defense that may be raised in any pleading allowed or ordered under Federal Rule of Civil Procedure 7(a); one of the pleadings allowed under Rule 7(a) is an answer.  *See Hernandez v. Balakian*, 2007 WL 1649911, at *2 (E.D. Cal. June 1, 2007).

At the same time, the Court concludes that the motion is well-taken with respect to the sixth and seventh affirmative defenses, which allege in purely conclusory terms that Valley acted with unclean hands and is equitably estopped from asserting claims against Progressive.  This manner of pleading is not sufficient even under the most liberal reading of Federal Rule of Civil Procedure 8.  The Court likewise concludes that the motion is well-taken with respect to the ninth affirmative defense, which merely reserves the right to assert additional affirmative defenses.  Progressive may seek leave of the Court if it wishes to assert additional affirmative defenses.

4

Case No. 5:11-cv-00574-JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE, WITH LEAVE TO AMEND
(JFLC2)

## III. ORDER

The motion to strike is GRANTED with respect to the sixth, seventh, and ninth affirmative defenses, WITH LEAVE TO AMEND as to the sixth and seventh affirmative defenses.  The motion otherwise is DENIED.

DATED:  5/13/2011

_____
JEREMY FOGEL
United States District Judge